CAROLINE NORRIS, ADELINE THOMSON, and others, appellants, *and* THE EXECUTORS OF JOHN R. THOMSON and others, respondents.

[Decided November Term, 1863.]

A testator, by his will, bequeaths to his wife specifically all that portion of his personal estate commonly known as goods and chattels, such as plate, furniture, horses, carriages, &c., and immediately after gives and devises " all the rest and residue of *my* real and personal estate" unto certain persons in trust for various uses and purposes, among which are, to give to each of five legatees named, two hundred and fifty shares of certain stock which testator had at the making of his will and at the time of his death. And the question being which of the bequests of the shares of stock were specific or general bequests—it was *held*

That it seems to be conceded that if a testator bequeaths to a person a certain number of cows or sheep or shares of stock it is a general legacy ; but if he add the word *my* cows, *my* sheep, or *my* shares of stock, it is a specific legacy, although in both cases he may be, at the time of making the will, and thence to his death, the owner of the number of the cows, sheep, or shares mentioned in the will.

In this case the testator, having otherwise disposed of all his personal property except the stocks and bonds, concerning which this question arises, and there being no other personal estate but his stocks and bonds on which the residuary bequest could operate, his describing such residue as " *my* personal estate" is equivalent to saying *my* stocks or *my* bonds, and makes the legacies specific, and not general.

This was an appeal from the decree of the Chancellor.

*A. O. Zabriskie,* for appellants.

*Bradley,* for respondents.

The opinion of the court was delivered by Judge Ogden, but the reporter has been unable to obtain a copy of it. The following opinion was delivered by Judge Van Dyke, who voted with the majority of the court to reverse the decision of the Chancellor.

VAN DYKE, J. The question presented to the court between certain of the legatees under the will of John R. Thomson, deceased, and the executors of the said will is, whether the legacies in question are specific or general.

By his will, the testator first bequeathed to his wife, specifically, all that portion of his personal estate, commonly known as goods and chattels, such as his plate, furniture, horses, carriages, &c.

Immediately after this he declares as follows: " All the rest and residue of *my* real and personal estate, of whatever nature or kind, or wherever situate, I give, devise, and bequeath unto John M. Read, Charles Macalester, and Alexander H. Thomson, their heirs, executors, and administrators, in trust for the following uses and purposes :

*First.* To give to my sister, Mrs. Caroline Norris, two hundred and fifty shares of the capital stock of the New York and Baltimore Transportation line ; to my sister, Adeline Thomson, two hundred and fifty shares of the capital stock of the said line ; to my sister, Amelia Read, wife of the Hon. John M. Read, two hundred and fifty shares of the capital stock of the said line ; to my nephew, Alexander Hamilton Thomson, one hundred and twenty-five shares of the capital stock of the said line, and to my niece, Elizabeth Norris, one hundred and twenty-five shares of the capital stock of the said line."

He then gives to five of his friends five bonds, of $1000 each, of the Delaware and Raritan Canal Company and Camden and Amboy Railroad and Transportation Company, redeemable in 1889, one to each legatee.

He then gives an annuity of $500 during life to his brother, Edward R. Thomson.

He then directs that, from the income of the *residue* of his estate, there shall be paid to his wife the sum of $10,000 annually, with the power to devise and bequeath the principal to certain of his relatives, and also gives to her the disposition of the surplus of such income, if any there shall be.

It is conceded by the pleadings that the testator left sufficient estate to answer all the requirements of the said will.

It is also admitted by the pleadings and the inventory that the testator, at the time of making his will, and from thence to the time of his death, was the owner of the shares of stock and the bonds mentioned in his will, and more of the same kinds.

The question now arises whether these bequests of the shares of stock and the bonds are specific or general legacies, or rather the question is, whether it was the intention of the testator to make them general or specific. We have but little difficulty in understanding what constitutes a specific legacy, and what a general one, but from the peculiar language, so often made use of in wills, the courts have had great difficulty in determining whether it meant the one thing or the other; and while the judicial decisions on the question have been very numerous, the one way and the other, but very few settled rules can be gathered from them.

It seems to be conceded, that if a testator bequeaths to a person a certain number of cows, or sheep, or shares of stock, it is a general legacy, but if he add the word *my* cows, *my* sheep, or *my* shares of stock, it is a specific legacy, although in both cases he may be at the time of making the will, and thence to the time of his death, the owner of the number of cows and sheep and shares of stock mentioned in the will. This seems to be at first sight a rather remarkable distinc-

tion, but such seems to be the rule adopted by the courts, and by the aid of which each tribunal has to grope its way through the unintelligible language so often found in wills. Hence another rule, admitted to be universal, is always to be resorted to in solving these difficult questions, and that is, what was the real intention of the testator. This, if it can be ascertained, is always to govern.

In the case before us, if we take the will itself, together with such other evidence and circumstances as we are permitted to take into consideration, it seems impossible to conclude that the testator intended these to be general legacies, with all the incidents which belong to that kind of bequest; for instance, if this be a general legacy, the executors would have been at liberty, at the death of the testator, if these shares were then worth in the market $100 per share, to sell them at that price, and at the end of a year, when they may have fallen to $20 per share, purchase them again, and hand them over to the legatees in their reduced condition, and turn the difference in a wholly different direction. This the testator could never have intended.

But we need only add the fact of the possession of these stocks and bonds by the testator at the time of making the will, and thence to the time of his death, to the language of the will itself to ascertain the intention of the testator. When he devised and bequeathed all the residue of his estate to the individuals named as trustees, having previously disposed of all his goods and chattels to his wife, he had nothing left of personal property but his stocks and bonds. In that devise and bequest he *does* call it *his* estate, real and personal, and when he applied that language to his personal estate he must have intended to apply it to his stocks and bonds exclusively, for he had nothing else to which it could apply; and it is equivalent to saying, I bequeath *my* stocks and bonds, now in my possession, to these gentlemen, who are to be my executors, to distribute and hand over to my legatees, at my death, according to the directions of my will.

I am aware that these individuals are made trustees of the

Norris *v.* Executors of John R. Thomson.

property thus committed to them, and this was quite proper, if not *necessary*, for the great bulk of his estate was to be held by them during the life of Mrs. Thomson, and to constitute them trustees with regard to this part of the estate was natural and usual; but they are also made executors of his will, and it was not in the character of trustees, but as executors, that they were to take charge of the legacies now under consideration, and distribute them among the legatees. They could not retain them more than a year at most, whether they be specific or general, and they deal with them the same as all other executors deal with such legacies, just as if there had been no other property confided to trustees by the will.

The true interpretation, then, of these clauses in the will is, that he gives to his executors these shares of stock and these bonds, which he then owned, and which he then declares to be his stocks and bonds, to be by them distributed and handed over to the legatees in the manner directed by the will. This is what the testator unquestionably intended. He simply made his executors his agents, as is always the case with specific legacies, to do this particular thing, that is, to pass over the particular thing specified and bequeathed, whether cows, sheep, or stock, to the person or persons for whom they are intended. This makes the legacies specific, and not general. In this way, and in no other, can I read the will.

The decision of the Chancellor was reversed by the following vote:

*For affirmance*—Judges COMBS, ELMER, WHELPLEY—3.

*For reversal*—Judges CORNELISON, FORT, KENNEDY, OGDEN, VAN DYKE, VREDENBURGH—6.